**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| United States of America | : | |
| | : | |
| Vs. | : | C.A. # 1:00-cr-00083-T-3 |
| | : | |
| Artin Coloian, | : | |
| Defendant | : | |
| | : | |

**DEFENDANT ARTIN COLOIAN'S**
**REPLY TO**
**GOVERNMENT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS CONSOLIDATED RESPONSE**

***Background***

The Defendant filed with this court a Motion to Expunge and a Motion to Seal in regards to the above case along with separate, supporting memoranda. The Government subsequently filed a consolidated response objecting to the Defendant's motions and attached a memorandum of law in support of its response. Oral arguments on the motions are set to be heard on February 10, 2006.

The Defendant believes it immaterial whether the two motions are heard separately or together. Since the Government has consolidated its response, the Defendant will assume there is no objection to consolidating the motions, and that they be considered in the alternative. Therefore, for purposes of this reply memorandum, the Defendant will consider the motions as one in the interest of clarity and judicial economy.

***District Court Jurisdiction Exists***

The Government in its responsive memorandum asserts that District Courts do not possess subject-matter jurisdiction to expunge judicial records.

To the contrary, the Third, Seventh, Ninth, and Tenth Circuits as well as the District of Columbia, have held that they do have such power. *United States v. Dunegan, 251 F.3d 477 (3rd Cir. 2001), United States v. Flowers, 389 F.3d 737, United States v. Sumner, 226 F.3d 1005 (9th Cir. 2000), United States v. Friesen, 853 F.2d 816 (10th Cir. 1988), Livingston v. U.S. Dep't of Justice, 759 F.2d 74 (D.C. Cir. 1985).*

The Defendant, like the Government, is unaware of any First Circuit authority on this point of law. However, this District Court has held that it does have the power to expunge. *Natwig v. Webster, 562 F.Supp. 225.*

Therefore, it is appropriate for this Court to hear and determine the Defendant's motions in this case.

***The Defendant's Record Should Be Expunged and/or Sealed.***

The courts have outlined several different approaches courts have taken when determining an issue of this nature. These approaches focus on the facts of the case, the nature of the wrong or wrongs averred by the Defendant, and the counterbalance of a law enforcement interest in accurate records.

In the Third and Ninth Circuits one would have to be the victim of "invalid or unlawful" criminal proceedings in order to have his or her motion to expunge and/or seal heard and granted. In the Tenth Circuit a defendant's case must show "extraordinary circumstances" to succeed. See *United States v. Dunegan*, 251 F.3d 477, *United States v.*

Friesen, *853 F.2d 816.* The Seventh Circuit proffers a balancing test in which weighs the "dangers of unwarranted adverse consequences to the individual" against the "public interest in maintenance of the records." *United States v. Flowers,* 389 F.3d at 739.

In the District of Columbia and the District of Rhode Island, while the granting of such a motion is not automatic, a defendant merely needs something more than an acquittal. See *Livingston v. U.S. Dep't of Justice, 759 F.2d 74, Natwig v. Webster, 562 F.Supp. 225.*

More precisely, in *Natwig,* this Court specified its guiding principles when it held that:

> *[T]he power to expunge an arrest record is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case...*
>
> *In deciding what constitutes "the unusual or extreme case" justifying expunction courts have balanced the government's need for the arrest record against the harm to the person arrested that results from maintaining records...*
>
> *There appears to be no definitive all purpose rule governing this determination and to a considerable degree each case must stand on its own two feet.*

Natwig, 562 F.Supp. at 228 (quoting United States v. Linn, 513 F.2d 925, Doe v. Webster, 606 F.2d 1231, United States v. Schnitzer 567 F.2d 536, Paton v. LaPrade, 524 F.2d 862, Diamond v. United States, 649 F.2d 496).

This case is, at the very least, unusual and extreme and not merely one of acquittal. The Defendant here was originally indicted along with multiple other defendants in a twenty-nine count indictment wherein he was the sole Defendant named in Counts Ten and Eleven and not mentioned at all in the other twenty-seven counts. During the course of the grand jury proceeding, a juror complained that the Government

was uncooperative with the Grand Jury and asserting that the prosecution was withholding material information on the case. It is not inconceivable that this information may have supported or even terminated the Defendant's case prior to indictment. Nevertheless, the Government proceeded undeterred.

The Defendant brought a motion to sever before the court based upon this prejudicial joinder to vindicate this violation of due process. The court agreed, granting the motion. Thereafter the counts against the Defendant contained in the original indictment were severed, and Mr. Coloian was tried separately. This court, in granting the motion stated that there was a "heightened risk" that evidence presented against other defendants could prejudice Mr. Coloian and he appeared the least culpable of all the defendants.

The Government's assertion in its responsive memorandum that Mr. Coloian was "validly indicted" overlooks these facts.

Later the Government's lead prosecutor, who was linked to the suggested misconduct outlined above, was exiguously fined and suspended from the bar after he, in violation of the court's express order, when he reduced the responsibility of his public office by showing an evidentiary video as a parlor game to guests at a house party he hosted during the course of the court case. Nevertheless, the Government proceeded undeterred.

After the election of George W. Bush to the presidency, during the pendency of the case, the centuries old traditional resignation of the United States Attorney of this district was held in abeyance in order to provide continuity in the prosecution of the original case. Such was the Government's zeal to obtain convictions against the primary

defendant, Vincent Cianci, an individual whom the Government, by its own public statements, had investigated for the better part of twenty years.

After his trial, the Defendant was acquitted by the jury.

Now the Defendant seeks to avoid the continuing stigma of the prosecution brought against him by an over zealous government prosecution by an expunction and/or sealing of his record. The stigma remains and is encountered on every occasion when the Defendant, now an attorney in private practice, a profession where character and reputation are the foundation of credibility and effective representation of clients, appears before a court. This stigma is latent and not subject to quantification. As well, in several specific instances the Defendant has been required to explain the circumstances of his prosecution and acquittal, the legal niceties of which escape those untrained in law.

The Government, undeterred, nevertheless objects.

They emphasize their interest in maintaining records citing *Flowers*, supra. *Flowers* is not applicable to Mr. Coloian's case. That case involved a conviction and no issues of Government misconduct. Mr. Coloian was acquitted. He was acquitted in the face of exceptional and unusual prosecutorial zeal. In *Flowers*, the Government illustrated, "Records relating to a person's criminal conduct are vital tools to law enforcement and are, at least as of today, essential to the computation of sentences..." 389 F.3d at 739. The jury decided that this Defendant had engaged in no criminal conduct. Thus, the absence of a record, if this court should grant his motion, could not interfere or impede the computation of any sentence. He had no criminal record when he was initially indicted and remains untainted by such now.